UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN VIRGIL,

        Petitioner,

                                       CASE NO. 05-CV-72480-DT
v.                                   JUDGE NANCY G. EDMUNDS
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION ............................................................ 2
II.    REPORT ..................................................................... 2
     A.    *Procedural History* ...................................................... 2
     B.    *Factual Background Underlying Petitioner's Conviction* .............................. 3
     C.    *Standard of Review* ...................................................... 6
     D.    *Counsel Claims* ......................................................... 8
          1.    *Denial of Substitute Counsel* .......................................... 9
              a. Clearly Established Law ............................................ 9
              b. Analysis ....................................................... 10
              c. Harmless Error ................................................. 13
          2.    *Ineffective Assistance of Counsel* ....................................... 15
              a. Clearly Established Law ........................................... 15
              b. Analysis ....................................................... 16
     E.    *Evidentiary Claim* ...................................................... 20
          1.    *Clearly Established Law* ............................................... 20
          2.    *Analysis* ........................................................... 21
     F.    *Sentencing Claims* ...................................................... 22
          1.    *Guidelines Scoring* ................................................... 22
          2.    *Inaccurate Information* ................................................ 23
              a. Clearly Established Law ........................................... 24
              b. Analysis ....................................................... 24
     G.    *Conclusion* ............................................................ 27
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 27

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Darrin Virgil is a state prisoner, currently confined at the Southern Michigan Correctional Facility in Jackson, Michigan.

2.     On December 17, 2002, petitioner was convicted of unarmed robbery, MICH. COMP. LAWS § 750.530; and assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, following a jury trial in the Wayne County Circuit Court.  On January 9, 2003, he was sentenced to a prison term of 110 months to 15 years for the robbery conviction, and to a prison term of 80-120 months on the assault conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     APPELLANT DARRIN VIRGIL SHOULD BE GRANTED A NEW TRIAL BECAUSE THE TRIAL COURT REFUSED TO APPOINT NEW COUNSEL WHERE THERE WAS A BREAKDOWN IN THE RELATIONSHIP BETWEEN THE APPELLANT AND HIS DEFENSE COUNSEL.

II.    THE TRIAL COURT ABUSED HIS DISCRETION BY ALLOWING EVIDENCE OF ALLEGED OTHER BAD ACTS WHERE THE EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE AND DENIED APPELLANT VIRGIL OF A FAIR TRIAL IN VIOLATION OF DUE PROCESS OF LAW.

III.   DEFENDANT DARRIN VIRGIL IS ENTITLED TO BE RESENTENCED BECAUSE THE STATUTORY SENTENCING GUIDELINES WAS MISSCORED AS TO OFFENSE VARIABLE 7 AND THE SENTENCE IS A DEPARTURE FROM THE STATUTORY SENTENCING GUIDELINES WITHOUT COMPLIANCE WITH THE DEPARTURE REQUIREMENTS.

2

IV.    APPELLANT DARRIN VIRGIL IS ENTITLED TO BE RESENTENCED
WHERE THE TRIAL COURT RELIED UPON INACCURATE
INFORMATION ABOUT THE APPELLANT'S PRIOR CONVICTIONS
IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW OR IN THE
ALTERNATIVE, REMAND FOR A HEARING ON THE ACCURACY OF
THESE CONVICTIONS.

In addition, petitioner filed a *pro se* supplemental brief raising the following claim:

DEFENDANT VIRGIL WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE
PROCESS OF LAW WHERE A SERIES OF UNPROFESSIONAL AND
GRIEVOUS ERRORS OF TRIAL COUNSEL DEPRIVED HIM OF HIS
CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AND HIS SIXTH
AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Virgil*, No. 247850, 2004 WL 1882659 (Mich. Ct. App. Aug. 24, 2004) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these five issues to the Michigan
Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard
order.  *See People v. Virgil*, 472 Mich. 879, 693 N.W.2d 821 (2005).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus
on June 22, 2005.  As grounds for the writ of habeas corpus, he raises the five claims that he raised
in the state courts.[1]

6.     Respondent filed his answer on January 9, 2006.  She contends that petitioner's
claims are without merit or not cognizable on habeas review.

B.    *Factual Background Underlying Petitioner's Conviction*

---

[1]In his form habeas application, petitioner omits his fourth claim in the Michigan Court of
Appeals, alleging that his sentence was based on inaccurate information.  However, petitioner has
also attached to his form application his brief in the Michigan Court of Appeals, which discusses
this issue.  Because petitioner's *pro se* application is entitled to a liberal construction, I assume that
he has raised the inaccurate information claim here.

Petitioner was convicted of unarmed robbery and assault in connection with the beating of his wife, Naomi Virgil, on September 6, 2006. The factual background underlying petitioner's conviction was accurately summarized in petitioner's brief in the Michigan Court of Appeals:

Complainant Naomi Virgil testified she was married to the Appellant for one year. She had filed for divorce in August, 2002. On September 6, 2002, Mrs. Virgil was scheduled to meet with Felicia Russell and the Appellant to discuss what to do with the marital house. She had left the home and went to a shelter. (12-16-02 pp80-82)

Mrs. Virgil caught a bus to the meeting. She arrived about 9 a.m. at Dexter and Oakman in Detroit. The Appellant told her that Ms. Russell was not in her office. They had a normal conversation. Then, the Appellant said, someone told him that she was dating a guy named, Wendell. She denied it. (12-16-02 p83)

He laughed and said it didn't matter. She responded, "if it didn't matter, why are you questioning me?" The Appellant grabbed her shirt so she couldn't get away. He said, "Bitch, who do you think you're getting slick off at your mouth with, bitch, I will beat your mother fucking ass and I don't give a fuck about your PPO." (12-16-02 p85)

Mrs. Virgil tried to stop him by talking about the personal protection order. The Appellant choked her. As she fell to the ground, the Appellant reached down and punched her in the nose. Her nose started to bleed. She screamed and tried to avoid being beaten up. She bit his left fingers that were in her mouth. She let his fingers go and he continued to beat her. He beat and kicked her while she was on the middle of Dexter Street. She ran into the street hoping that she would stop the traffic. (12-16-02 pp86-88)

During the beating, she became unconscious. She didn't remember what happened. Mrs. Virgil had a black purse with eighty-one dollars and some change. She did not remember if the Appellant took her purse. The police gave her the purse back about a week later without the money. (12-16-02 pp89-90) She remembered a white man told her not to move and was trying to help her. (12-16-02 p91)

The Complainant identified four photographs of her lying in a puddle of blood on Dexter Street and her facial injuries. (12-16-02 pp91-95) She was treated at the hospital for more than two or three hours but did not stay overnight. She had a swollen face for two weeks. She was kicked seven or eight times but didn't know how many times she was punched in her face. (12-16-02 p97)

On cross-examination, Mrs. Virgil denied she got into the Appellant's car that morning. They talked for about five minutes before the fighting started. (12-16-02 p101)

Mrs. Virgil testified that she did not tell the police in her written statement that she ran into Dexter Street to flag down help. (12-16-02 p104) She didn't testify at the preliminary examination that she ran into the street to flag people down. She had testified earlier that she fell into the street during the fight. (12-16-02 p105)

Mrs. Virgil confirmed she wrote in her police statement that the Appellant hit her with a blackjack. She testified she did not see a blackjack in his hand or that she got hit with one when she was conscious. She did not see the Appellant take her purse. (12-16-02 pp109-110)

On redirect, Mrs. Virgil explained why she wrote the Appellant hit her with a blackjack in the police statement. She knew he had a blackjack and she was hit hard in the head. She knew he wanted to kill her "because on several occasions when he used to say it's gonna be a bloodbath." (12-16-02 p111) Over defense objections, Mrs. Virgil testified "he used to always tell me that. I heard that so much. It's gonna be a bloodbath. He told me he would kill me and cut my body up in parts –." (12-16-02 pp112-113) She stated the Appellant told her that all the time. About two weeks before she went to the shelter, the Appellant said, "he would kill her . . . between me, him and Yahweh, he was going to cut my head off." (12-16-02 pp113-114)

* * * *

In response to the Court's clarifying questions, Mrs. Virgil agreed she was just trying to provide information to the police in her written statement and wasn't certain about getting hit with the blackjack. (12-16-02 p118)

On re-cross, Mrs. Virgil confirmed she wrote the Appellant hit her with a blackjack as a matter of fact. There was no uncertainty. (12-16-02 p119)

The Complainant's medical records were admitted on Defense Counsel motion. (12-16-02 pp119-120)

Next, Jesse Howard, resident of the apartment building on Dexter Street, testified he saw a man and a woman arguing in front of his building on September 6, 2002. The man choked the woman with both hands. He told her to tone down because she was too loud. She asked him to let her go. Howard identified Mrs. Virgil whom he saw in court as the woman in the fight. Another tenant yelled at the man and he let her go. (12-16-02 pp121-123)

Howard saw the woman run to the entrance of the building. The man grabbed her. She tried to get across the street and he caught her in the middle of the intersection. He threw her down, beat her with his hands and began to kick her. Howard could not identify the man. (12-16-02 pp124-125)

Howard went outside to help within a couple of minutes. The building manager and other people were there. Some people said, "he had left the scene of the crime on foot with her purse." Howard did not see a purse during the struggle. The police were there when he went outside and spoke to them. (12-16-02 pp126-127).

Over the defense's objection, Howard testified he heard the Complainant tell "Derrick or Darrin to stop." (12-16-02 p127)

Next, Robert Stubblefield, United States Naval Corpsman and civilian paramedic, testified he observed two people tussling, kind of horseplay, in the middle of Dexter while driving. (12-16-02 p131) He saw the man hitting the female repeatedly with his hand in the fac and chest. He realized it wasn't horseplay and got out of his vehicle to render aid. (12-16-02 p132) He pulled his car in a way that no

one could run over her.  She was in the middle of the street and looked unconscious.  The man was stomping on her head and kicking her back.  (12-16-02 pp133-134).

Stubblefield testified the man walked away with her purse in his hand.  He actually saw nothing in the man's hands when he was striking her but when he walked away he had her purse.  He stated, "it looked like he had - and if I remember right I think he actually took it away from her when she was on the ground.  As a matter of fact, – I think he lifted it out of her hand."  (12-16-02 p136).  Defense Counsel objected to this testimony: "either he knows or he doesn't know what he saw."  (12-16-02 p137) Stubblefield agreed it was the best that he could recall.

Another reason that Stubblefield knew it was her purse, while they waited for the EMS, the Complainant regained consciousness and told him that "he took her purse to get some type of check of something to that extent."  (12-16-02 p137) Mrs. Virgil did not respond when Stu[bb]lefield, critical care paramedic, first arrived on the scene.  (12-16-02 p138) He grabbed Mrs. Virgil's head and held her in a C-spine stabilization position.  He helped EMS load her into the ambulance.  He could not state how long she was unconscious. (12-16-02 pp142-143) Stu[bb]lefield could not identify the assailant.  (12-16-02 p143)

Next, Detroit Police Officer Daniel Mathison testified he preserved the crime scene while his partner interviewed witnesses and talked to the Complainant.  The officers proceeded to Detroit's eastside to apprehend the perpetrator.  They went to the Appellant's residence and he was not there.  They had a name, a description of a man with no hair and information that his car broke down somewhere in that area.  (12-16-02 pp146-147)

The Officers saw a bald man under the hood of a car at a gas station about a mile or two from the Appellant's residence.  (12-16-02 p148) The man had blood on his knuckles and identified himself as Darrin Virgil.  (12-16-02 p148) After the Appellant was placed in custody, Officer Mathison looked inside the car and saw the Complainant's purse on the back seat.  The identification in the purse belonged to Naomi Virgil.  (12-16-02 p149)

Def.-Appellant's Br. on App., in *People v. Virgil*, No. 247850 (Mich. Ct. App.), at 1-8.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Counsel Claims*

Petitioner raises two claims relating to his counsel at trial. First, he contends that the trial court erred in denying his request for substitute counsel. Second, he argues that his trial counsel rendered constitutionally inadequate assistance. The Court should conclude that petitioner is not

entitled to habeas relief on these claims.

      1.    *Denial of Substitute Counsel*

           *a.  Clearly Established Law*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  This right contemplates a corollary right to the counsel of one's choice.  However, "[a]lthough the Sixth Amendment contemplates a right to counsel of choice, that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel."  *Haynie v. Furlong*, No. 98-1177, 1999 WL 80144, at *1 (10th Cir. Feb. 17, 1999); *see also*, *Wheat v. United States*, 486 U.S. 153, 159 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects.").  As the Supreme Court has explained, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers."  *Wheat*, 486 U.S. at 159.  Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'"  *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).

Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication

between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).   In determining whether the trial court erred in failing to appoint substitute counsel, a federal habeas court should consider: (1) the timeliness of the defendant's motion; (2) the adequacy of the trial court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense. *See United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986) (adopted by the Sixth Circuit for use in habeas cases in *Tolliver v. Dallman*, No. 94-3491, 1995 WL 364176, at *2 (6th Cir. June 16, 1995)); *see also*, *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999).

### b. Analysis

On the first day of trial, petitioner informed the court that he desired new counsel.  Petitioner indicated that, in his view, appointed counsel had not done anything to represent him.  Petitioner also indicated that he had sent letters to the court about this matter, and that he had filed a grievance against counsel.  *See* Jury Trial Tr., dated 12/16/02, at 3.  The trial court questioned petitioner about his claim that counsel had done nothing to represent him, and petitioner indicated that counsel had represented him at only two of the six appearances petitioner had made at the court, the other four appearances involving someone from counsel's office standing in for counsel.  *See id*. at 4-5.  The trial court indicated that there was nothing improper in this, because the prior appearances were procedural matters such as arraignment on the information and scheduling a trial date, and it is common for attorneys from the same office to stand in for each other on such matters.  *See id*. at 5-6  The trial court denied petitioner's request for substitute appointed counsel, informing petitioner that

he could represent himself, retain an attorney, or proceed with appointed counsel. *See id.* at 6.
Petitioner's appointed counsel indicated that he was ready and prepared to try the case. *See id.*
Petitioner then chose to proceed with appointed counsel. *See id.*

On appeal, the Michigan Court of Appeals concluded that petitioner has failed to establish good cause for substituting counsel on the day of trial, and that the trial court therefore did not err in denying his request for substitute counsel. The Court reasoned:

> Defendant's concern that Curling was unprepared does not constitute a legitimate difference of opinion regarding a fundamental trial tactic. Further, it appears that defendant merely lost confidence in Curling because of perceived inattentiveness, which is not good cause to substitute counsel. Thus, the trial court properly declined to substitute counsel in this case.

*Virgil*, 2004 WL 1882659, at *2, slip op. at 2. The Court should conclude that this determination was reasonable, and thus that petitioner is not entitled to habeas relief on this claim.

As the court of appeals concluded, petitioner failed to establish good cause for substitution of counsel, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith*, 923 F.2d at 1320. It is true that petitioner expressed his belief that counsel was not adequately representing him. This belief alone, however, does not establish the type of irreconcilable conflict or complete breakdown of the attorney-client relationship which mandates the appointment of substitute counsel. There is no constitutional right to a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Here, neither petitioner nor his counsel indicated that there had been a complete breakdown in communication. Petitioner has presented no allegation that he and counsel were "so at odds as to prevent presentation of an adequate defense." *United States v. Walker*, 9 F.3d 1245, 1251 (7th Cir. 1993) (internal quotations omitted). Rather, petitioner was merely concerned that

11

counsel had not appeared at some pretrial proceedings.

Further, the fact that petitioner had filed a grievance against counsel, standing alone, does not demonstrate a conflict of interest between petitioner and his counsel. Under the relevant caselaw, an "actual conflict of interest results if the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994) (internal quotation omitted); *accord Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir. 1995). In order to show such a conflict, petitioner must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) (internal quotation omitted)); *accord Riggs v. United States*, 209 F.3d 828, 831-32 (6th Cir. 2000). An "adverse effect" is established where the defendant points to "some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Perillo*, 205 F.3d at 781 (internal quotation omitted); *accord Stoia*, 22 F.3d at 771 (quoting *Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir. 1985)).

Here, petitioner cannot show that counsel was acting under an actual conflict of interest. Notwithstanding the allegation in the grievance that counsel was ineffective, counsel was not "required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia*, 22 F.3d at 770. This is because the filing of the grievance alone did not require counsel to take a position in which he was required to contradict defendant or testify as to the workings of the attorney-client relationship. Petitioner alleged only that counsel was not providing him with copies of discovery material, a situation which was rectified on two occasions.

Thus, this case is similar to *United States v. Burns*, 990 F.2d 1426 (4th Cir. 1993), in which

the court held that a state bar grievance filed by the defendant against his attorney three days prior to trial did not create a conflict of interest. The court explained that counsel "could [not] have gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on Burns's behalf at trial." *Burns*, 990 F.2d at 1438; *see also*, *United States v. Holman*, 314 F.3d 837, 845-46 (7th Cir. 2002); *cf. United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996) ("This argument ignores the logic that . . . an attorney fearing an ineffective assistance of counsel claim has an incentive to do his best, not the contrary."). Several state cases have employed similar reasoning in rejecting conflict of interest claims, as has an unpublished decision of the Sixth Circuit. *See Wilson v. Rogers*, No. 96-3086, 1997 WL 615767, at *3 (6th Cir. Oct. 3, 1997); *Malede v. United States*, 767 A.2d 267, 271 (D.C. 2001); *Mercer v. Commissioner of Correction*, 724 A.2d 1130, 1134 (Conn. Ct. App. 1999); *People v. Adams*, 553 N.E.2d 3, 5 (Ill. Ct. App. 1990); *Commonwealth v. DiBenedetto*, 693 N.E.2d 1007, 1014 (Mass. 1998). This reasoning is applicable here: counsel would have gleaned no advantage by not zealously representing petitioner, and thus the record does not demonstrate an actual conflict.

In short, petitioner cannot demonstrate that there was a complete breakdown in communication with his attorney, or that counsel was acting under a conflict of interest. He thus cannot show that he had good cause to warrant substitution of counsel, or that the Michigan Court of Appeals's rejection of his claim amounted to an unreasonable application of clearly established law. Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

### c. Harmless Error

Further, even assuming that the trial court erred by not granting counsel's motion to withdraw and appointing substitute counsel, petitioner's claim fails because any error was harmless.

13

As noted above, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, the courts that have considered the issue have concluded that "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless." *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also*, *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, at *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *Stephens v. Costello*, 55 F. Supp. 2d 163, 172 (W.D.N.Y. 1999).

The Sixth Circuit has issued conflicting decisions on whether harmless error review is appropriate where a trial court inappropriately fails to appoint substitute counsel. *Compare Krist v. Foltz*, 804 F.2d 944, (6th Cir. 1986) (performing harmless error review), *with Wilson v. Mintzes*, 781 F.2d 275, (6th Cir. 1985) (harmless error inappropriate). Recognizing this intracircuit conflict, the *Tolliver* court determined that harmless error review is appropriate. The court explained:

> The Supreme Court has not directly ruled on the specific issue of whether a finding that a trial court erred in denying a request for new counsel is subject to a harmless error or prejudice analysis, or whether it would required *per se* reversal as found by the district court here. The Supreme Court, however, has increasingly moved in recent years toward expanding those cases under which a harmless error analysis applies to collateral appeals. *See, e.g.*, *O'Ne[a]l v. McAninch*, 115 S. Ct. 992 (1995); *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1722 (1993). The earlier panels confronting this issue did not have the benefit of *Brecht* or *O'Ne[a]l* to guide their analysis. In light of recent Supreme Court rulings it seems appropriate to extend the harmless error analysis to counsel of choice cases.

14

*Tolliver*, 1995 WL 364176, at *3.[2]  Although *Tolliver* is not binding on this Court because it is an unpublished opinion, *see* 6TH CIR. R. 28(g), 206(c), it is persuasive as it is the only Sixth Circuit case to directly address the issue in light of the Supreme Court's decisions in *Brecht* and *O'Neal*, *see* 6TH CIR. R. 28(g) (although reliance on unpublished opinions is generally disfavored, such opinions may be relied on where they have "precedential value in relation to a material issue in a case and . . . there is no published opinion that would serve as well[.]"); *In re Braddy*, 195 B.R. 365, 370 (Bankr. E.D. Mich. 1996), and because it is in accord with the decisions of other courts on the matter.

Thus, even if petitioner had established good cause for the appointment of substitute counsel, he is entitled to habeas relief only if counsel rendered constitutionally ineffective assistance at trial. As discussed below, however, petitioner's ineffective assistance of counsel claims are without merit. Thus, even if the trial court erred in denying counsel's motion to withdraw, petitioner was represented by an effective advocate for his case, in accordance with the "essential aim" of the Sixth Amendment right to counsel. *See Wheat*, 486 U.S. at 159. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Ineffective Assistance of Counsel*

Petitioner also claims that his trial counsel rendered constitutionally deficient performance in two respects. First, he contends that counsel gave him erroneous advice which caused him to waive his right to testify on his own behalf. Second, petitioner contends that counsel failed to adequately cross-examine Robert Stubblefield. The Court should conclude that petitioner is not

---

[2]Because petitioner is proceeding *pro se*, a copy of the Sixth Circuit's unpublished decision in *Tolliver* is attached at the end of this Report.

entitled to habeas relief on these claims.

### a. Clearly Established Law

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

16

*b. Analysis*

Petitioner first contends that counsel was ineffective for advising petitioner not to testify because he could be impeached with his eight prior felony convictions.  As explained more fully in connection with petitioner's claim challenging the use of these convictions at sentencing, a Florida Department of Corrections report listed eight convictions relating to petitioner.  In his *pro se* supplemental brief in the Michigan Court of Appeals, petitioner contends that five of the charges reflected in this report were dismissed in exchange for his guilty pleas to the other three charges.  Those three charges were for sale or purchase of cocaine and aggravated assault with a deadly weapon.  Petitioner contends his trial counsel erred in advising him that all eight convictions listed on the report could be used to impeach him if he testified, when in reality there were only three prior convictions.  Petitioner also contends that even with respect to the three convictions, counsel's advice was erroneous.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the eight versus three conviction issue, even if petitioner's description of the disposition of the Florida charges is accurate, petitioner cannot how counsel's advice should have changed.  Even if only the three convictions were considered, they would have presented to the jury two instances of petitioner having been convicted of assaulting another person with a deadly weapon.  Regardless of the other convictions, the introduction of these convictions would have been devastating to petitioner's case, and petitioner cannot show that counsel's advice either would have or should have changed if counsel had known that petitioner had only three, as opposed to eight, prior convictions.  Thus, the appropriate question is whether counsel's advice concerning the admissibility of the three admittedly valid convictions was unreasonable so as to constitute deficient

17

performance.

Even assuming that counsel's performance was deficient, however, petitioner cannot show that he was prejudiced. *See United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996) (citing cases) (claim that counsel's ineffectiveness led defendant to forgo his right to testify does not establish prejudice *per se*, and defendant must still show that he was prejudiced by his failure to testify). Although petitioner's affidavit, submitted in conjunction with his *pro se* supplemental brief in the Michigan Court of Appeals, avers that petitioner would have testified but for counsel's advice, petitioner does not provide any information as to the substance of his purported testimony. It does not appear that petitioner would have offered a blanket denial of his involvement, as he did not offer such a denial at sentencing. There, he claimed only that he "did not do everything that she [his wife] said I done," Sentencing Tr., at 11, and denied that he had used a billy club, *see id.* at 13. Further, petitioner's defense at trial was not a denial of the assault, but rather that the assault did not rise to the level of an assault with intent to commit great bodily harm. To the extent that petitioner's testimony would have conflicted with the victim's testimony concerning the actual nature of the assault, however, Howard and Stubblefield, both disinterested witnesses, corroborated the victim's account of the assault. In the absence of any specifics regarding his purported testimony, and in light of the overwhelming evidence which contradicted his purported testimony on the only aspect of his defense to which he likely would have testified (*i.e.*, the nature of the assault itself), petitioner cannot show that, had counsel not misadvised him and had he testified, there is a reasonable probability that the result of the trial would have been different. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004); *United States v. Betancur*, 84 Fed. Appx. 131, 135 (2d Cir. 2004); *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991); *United States v. Aikens*, 358 F. Supp. 2d

18

433, 436-37 (E.D. Pa.), *aff'd*, 142 Fed. Appx. 621 (3d Cir. 2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner next contends that counsel was ineffective for failing to properly cross-examine Robert Stubblefield. During direct examination, Stubblefield variously testified that he witnessed the assault from his car, and that he either looked through the vehicle in front of him or over the vehicle. *See* Jury Trial Tr., dated 12/16/02, at 131 ("I actually observed through that vehicle."), 134 ("Actually, what was happening is the vehicle was a little bit lower vehicle I could actually see over the vehicle, and as I came closer, the profile began to rise of the vehicle I could see through the vehicle at that point."). Defense counsel conducted no cross-examination of Stubblefield. Petitioner contends that, had counsel cross-examined Stubblefield regarding the inconsistencies in this testimony, the prosecutor's case could have been significantly weakened. Petitioner does not explain, however, how this is so. In the first place, contrary to petitioner's argument Stubblefield was not the only disinterested witness to corroborate the victim's testimony; Howard also corroborated her testimony concerning the nature of the assault. Second, petitioner has not identified any actual inconsistency in Stubblefield's testimony beyond that relating to Stubblefield's view of the assault, and that supposed inconsistency was explained by Stubblefield on direct examination when he noted that he initially could see over the car which was in front of him, and as he got closer and the angles changed, he could no longer see over the car but could see through the car's windows. Thus, petitioner has failed to show that counsel was ineffective, or that he was prejudiced by counsel's failure to cross-examine Stubblefield. *See Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993) (counsel not ineffective for failing to "develop every bit of testimony through

all available inconsistent statements.").[3]  Accordingly, the Court should conclude that petitioner

is not entitled to habeas relief on his ineffective assistance of counsel claims.

E.    *Evidentiary Claim*

Petitioner next claims that he was denied a fair trial by the victim's testimony that he had

previously threatened to kill her.  The Court should conclude that petitioner is not entitled to habeas

relief on this claim.

1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we

reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a

federal court on habeas review "ha[s] no authority to review a state's application of its own laws).

Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

issue concerning the admissibility of evidence does not rise to the level of a constitutional

magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483,

_____

[3]Petitioner contends that under the Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984), he need not establish prejudice because counsel's failure to cross-examine Stubblefield amounted to a complete failure to subject the prosecutor's case to adversarial testimony.  This claim is without merit.  As the Court has more recently explained, "[w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure mut be complete."  *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).  Thus, where the defendant's "argument is not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points," *Cronic* is inapplicable and the defendant must satisfy *Strickland*'s two-part test.  *Id*. at 697.  Here, counsel subjected the prosecutor's case to adversarial testing, including through vigorous cross-examination of the victim.  His failure to cross-examine one prosecution witness, even a "key" one, does not amount to a complete denial of counsel to which the *Cronic* presumed prejudice standard applies.  *See Moss v. Hofbauer*, 286 F.3d 851, 861-62 (6th Cir. 2002).

487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

The Court should conclude that petitioner is not entitled to habeas relief. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that

a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Further, petitioner cannot even show that the admission of this evidence was improper under state law. Although "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,] [i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act[.]" MICH. R. EVID. 404(b)(1). As the Michigan Court of Appeals explained, petitioner was charged with assault with intent to commit great bodily harm, making petitioner's intent an important issue at trial. Petitioner's "past threats to kill and dismember the victim are relevant in that they tend to show that defendant intended to harm her." *Virgil*, 2004 WL 1882659, at *2, slip op. at 3; *see also*, *Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002) (Friedman, J.). Thus, "[t]he evidence was rationally connected to the crime charged here and did not deprive petitioner of due process." *Dell*, 194 F. Supp. 2d at 645. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Sentencing Claims*

Finally, petitioner raises two challenges to his sentence. First, he contends that the trial court erred in scoring his offense under the sentencing guidelines, and in departing from the guidelines range without an adequate explanation of his reasons. Second, petitioner contends that his sentence was based on inaccurate information concerning his prior criminal history. The Court should

22

conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Guidelines Scoring*

Petitioner first claims that the trial court erred in scoring his sentence under the sentencing guidelines, and erred in departing from the sentencing guidelines in imposing his sentence. The Court should conclude that petitioner is not entitled to habeas relief on this claim. As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claims that the court improperly scored the guidelines range and departed from the guidelines raise issues of state law not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also*, *Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Further, petitioner is not entitled to habeas relief based on his claim that the trial court failed to adequately state its reasons for departing from the guidelines. Although state law may require a Michigan trial judge to state the reasons for imposing a particular sentence on a defendant, the Constitution does not. Thus, the failure of the trial judge to state his reasons for imposing the particular sentence does not raise a cognizable habeas claim. *See Branch v. Cupp*, 736 F.2d 533,

23

536 (9th Cir. 1984); *Bennett v. Duckworth*, 909 F. Supp. 1169, 1178 (N.D. Ind. 1995), *aff'd*, 103 F.3d 133 (7th Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

      2.    *Inaccurate Information*

Petitioner next claims that the trial court relied on inaccurate information in imposing its sentence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      *a.  Clearly Established Law*

Petitioner's claim invokes the rule established in *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972). In both of those cases, "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074

24

(E.D. Mich. 2000) (Gadola, J.).

### b. Analysis

Prior to sentencing, a presentence report identified three prior felony convictions in Florida. However, at the sentencing hearing the prosecutor provided the court and petitioner with a copy of a report from the Florida Department of Corrections, listing eight prior convictions.  At the sentencing hearing, petitioner's counsel indicated that she "talked to Mr. Virgil about those convictions and he does admit to committing those crimes and being sentenced for them." Sentencing Tr., at 4.  Further, the trial court discussed the prior convictions with petitioner at sentencing, and petitioner did not at any time indicate that the report of those convictions was inaccurate. *See id*. at 14-15.  The Michigan Court of Appeals rejected petitioner's claim, explaining that petitioner had "provided no offer of proof in support of his assertion that the information regarding the eight prior convictions is inaccurate," and that "when asked at sentencing about the report from Florida, defendant admitted to the eight prior convictions."  *Virgil*, 2004 WL 1882659, at *4, slip op. at 5.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, at the sentencing hearing petitioner's counsel indicated that he had discussed the matter with petitioner, and petitioner admitted to having been convicted of the offenses listed in the Florida report.  Petitioner did not correct counsel, nor did he indicate any error in the report when the trial court directly discussed the convictions with petitioner.  "Petitioner's failure to dispute the accuracy of [this information] precludes [him] from maintaining a habeas corpus challenge to its consideration by the sentencing judge." *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *United States v. Kelly*, 687 F.2d 1217, 1221 (8th Cir. 1982) (per curiam) ("When the

sentencing court has afforded the defendant full opportunity to point out any factual errors in the presentence report, and he fails to do so, the court does not deny the defendant due process in imposing sentence.").

Second, petitioner has not shown that the trial court relied on any materially false facts in imposing sentence.  In his *pro se* supplemental brief on appeal, petitioner indicates that the Florida report was incorrect because five of the eight charges listed in that report were dismissed in exchange for his guilty plea to the remaining three charges.  Those remaining three charges, according to petitioner's brief, were for sale or purchase of cocaine, and two charges for aggravated assault with a deadly weapon.  While the trial court did discuss petitioner's prior convictions in imposing sentence, it is clear that the court's sentence was based not on the fact of these convictions themselves, but on the underlying conduct reflected in the convictions.  After discussing the convictions listed in the Florida report, the court explained its basis for the sentence imposed:

> I think you need to be rehabilitated.  You do.  You have a pattern of violence that you have to quit if you're going [to] live in a civilized society.  People have to know they can walk down the street without having to run the risk of having somebody act out on them.  You can't do that, so you need to be rehabilitated.
> . . . .
> Society needs to be protected from you.  Your conduct shows you are.  I'm not saying you're dangerous at all times under all circumstances, but your record indicates you're a dangerous man.
> Finally, to the extent that this will deter you and others from engaging in this conduct and the fact you need to be punished for what you did the sentence will have served it's purpose.

Sentencing Tr., 16-17.  Even if the five allegedly dismissed convictions had not been listed on the report, the same factors which lead the court to impose the sentence that it did would have existed, namely, petitioner's history of violent assaults.  Further, although petitioner contends that the five remaining charges were dismissed as a result of the plea bargain, he does not allege, nor did he

26

allege in the state courts, that the conduct underlying those charges did not, in fact, occur.  As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994).  Thus, the fact that the charges may have been dismissed pursuant to a plea agreement "is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases." *Stewart*, 878 F. Supp. at 1144.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis*

27

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 3/30/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 30, 2006.
>
>                              s/Eddrey Butts
>                              Case Manager

Westlaw.

57 F.3d 1070 (Table)                                              Page 29
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

**H**

NOTICE:   THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions"
appearing in the Federal Reporter.  Use FI
CTA6 Rule 28 and FI CTA6 IOP 206 for rules
regarding the citation of unpublished
opinions.)

United States Court of Appeals, Sixth
Circuit.
Walter A. **TOLLIVER**,
Petitioner-Appellee,
v.
William DALLMAN,
Respondent-Appellant.
**No. 94-3491.**

June 16, 1995.

 On Appeal from the United States District
Court, for the Southern District of Ohio, No.
92-00845;  George C. Smith, Judge.

 S.D.Ohio

 REVERSED.

Before: MERRITT, Chief Judge, KEITH and
WELLFORD, Circuit Judges.

 DAMON J. KEITH, Circuit Judge.

 **\*\*1** The Respondent-Appellant, William
Dallman ("Dallman") appeals the district
court's granting of the Petitioner-Appellee's,
Walter A. Tolliver ("Tolliver"), petition for a
writ of habeas corpus, pursuant to 28 U.S.C.
§ 2254.   Because we find the actions of the
trial court were harmless error, we REVERSE
the district court's judgment granting
Tolliver's petition for a writ of habeas corpus.

 I. Statement of Facts and Procedural History
  An Ohio Grand Jury for Franklin County
returned a two-count indictment against
Tolliver.   Count One charged Tolliver with
aggravated robbery, in violation of Ohio
Revised Code ("ORC") § 2911.01.   Count
Two charged him with felonious assault with
a physical harm specification, in violation of
ORC § 2903.1.

 Following a jury trial, Tolliver was found
guilty of aggravated robbery and not guilty of
felonious assault.   He was sentenced by the
trial court to eight to twenty five years in
prison.

 Tolliver made two motions which the trial
court viewed as requests for substitute
counsel.   The trial court denied both requests.

 Tolliver's first request for the substitution of
counsel was made on the day trial was
scheduled to start.   Tolliver's counsel stated
to the court that in his opinion Tolliver should
have accepted the state's plea bargain offer of
one count of aggravated robbery with a

 © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                    Page 30
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

sentence of 7 to 25 years and that there was no defense to the charges in the indictment. "I have advised [Tolliver] that he has no defense, that I cannot win this case under any circumstances, and that the choice to go to trial rests on Mr. Tolliver's shoulders." (J.A. 50). Tolliver maintained his desire to proceed to trial, but indicated he felt he was being railroaded.   Tolliver stated he wanted the court to appoint him a different attorney. Tolliver told the trial court his current counsel refused to place him in an identification line-up and would not allow him to take a lie detector test.  The trial court denied Tolliver's request for substitute counsel.

 Tolliver's second request came at the close of the state's case.   Tolliver's counsel told the trial court he believed Tolliver would commit perjury if he were to take the stand.  He told the trial court, "I do not believe that anything Mr. Tolliver will testify to will be the truth." (J.A. at 97).   At this point, Tolliver again expressed his dissatisfaction with court appointed counsel and stated his desire to have the trial court appoint him a new attorney.   The trial court once again denied the request for substitute counsel.

 Tolliver appealed his conviction to Ohio's Tenth District Court of Appeals.  The appeal claimed, inter alia, he was denied his Sixth Amendment right to effective counsel.   The Ohio Court of Appeals affirmed Tolliver's conviction. [FN1]

 Tolliver appealed to the Ohio Supreme Court on the same grounds.   The Ohio Supreme Court dismissed Tolliver's appeal sua sponte because no substantial constitutional question existed.

 **2 Tolliver then filed a petition for writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254.  Tolliver's petition alleged the actions of his court appointed counsel at trial denied him his sixth amendment right to the effective assistance of counsel.  His petition asserted the trial court violated his sixth amendment right to effective assistance of counsel when it failed to adequately inquire into petitioner's requests for appointment of substitute counsel.

    The  district  court  issued  an  order conditionally  granting  the  writ  of  habeas corpus with regard to Ground One, finding the trial  court  violated  Tolliver's  Sixth Amendment  right  to  effective  assistance  of counsel by failing to adequately inquire into his requests for appointment of substitute counsel, and denied the rest of the grounds in his petition.   The state submitted a motion to alter or amend judgment which was denied by the district court.

    The state filed this timely appeal.

                    II. Discussion
    The state argues the district court erred in granting  Tolliver's  writ  of  habeas  corpus petition.   The state claims the record from trial clearly indicates the trial court conducted an  adequate  investigation  into  Tolliver's complaints  about  his  attorney.     In  the alternative, the state claims that even if the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                    Page 31
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

trial court's inquiry was lacking, any error which resulted was harmless.

We review *de novo* the district court's order granting the writ of habeas corpus. *Wright v. Dallman,* 999 F.2d 174, 178 (6th Cir.1993).

The Sixth Amendment right to counsel entitles a defendant to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 686 (1984). This right has not been extended to allow an indigent defendant the counsel of his choice. *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate good cause to warrant substitution of counsel." *Id.*

The First Circuit has established a three-prong test to establish when a defendant has shown "good cause." *United States v. Allen,* 789 F.2d 90, 92 (1st Cir), *cert. denied.* 479 U.S. 846 (1986). A reviewing court is to consider the denial of a defendant's motion for substitute counsel based on: 1) the timeliness of the defendant's motion; 2) the adequacy of the trial court's inquiry into the defendant's complaint; and 3) whether the conflict between the defendant and his/her counsel is so great it has resulted in a total lack of communication preventing an adequate defense. *Id.*

This Circuit and the State of Ohio have accepted the proposition a trial court must make some inquiry into a defendant's complaints when there is a request for the substitution of appointed counsel. *See United States v. Jennings,* 945 F.2d 131, 132 (6th Cir.1991); *Iles,* 906 F.2d at 1130; *State v. Pruitt,* 18 Ohio App.3d 50, 57 (1984); *State v. Deal,* 17 Ohio St.2d 17, 19 (1969). The *Iles* court held "[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel be appointed, the trial court clearly has a responsibility to determine the reasons for the defendant's dissatisfaction with his current counsel." *Iles,* 906 F.2d at 1130. Inquiry by the trial court aids in determining whether "good cause" has been shown. Further, it helps ease the defendant's mistrust of the system, preserves the integrity of the trial and fosters confidence in the jury verdict. *Id.*

**\*\*3** We note that earlier decisions of panels of this Court have contended with the issue of whether the right to counsel of choice should be governed by a prejudice standard on collateral review, relying on *Strickland v. Washington,* 466 U.S. 668 (1984). *See, e.g., Morton v. Foltz,* 782 F.2d 1042 (6th Cir.1985) (unpublished decision); *Wilson v. Mintzes,* 781 F.2d 275 (6th Cir.1985). Other panels have not addressed the prejudice issue at all because they found the trial court did not abuse its discretion in denying the request for substitute counsel. *See, e.g., Jones v. Tennessee,* 805 F.2d 1034 (6th Cir.1986) (unpublished decision); *Scott v. Dahlberg,* 1990 U.S.App. LEX 18632 (Oct. 19, 1990) (unpublished decision). We have identified only one case that performed a prejudice analysis under *Strickland,* concerning the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                    Page 32
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

failure of the trial court to appoint substitute counsel. The analysis, however, was dicta as the Court determined that the trial court did not abuse its discretion in failing to appoint new counsel because the defendant had failed to prove any "irreconcilable differences" between himself and his attorney. *Krist v. Foltz,* 804 F.2d 944 (6th Cir.1986).

The Supreme Court has not directly ruled on the specific issue of whether a finding that a trial court erred in denying a request for new counsel is subject to a harmless error or prejudice analysis, or whether it would require *per se* reversal as found by the district court here. The Supreme Court, however, has increasingly moved in recent years toward expanding those cases under which a harmless error analysis applies to collateral appeals. *See, e.g., O'Neil v. McAninch,* 115 S.Ct. 992 (1995), *Brecht v. Abrahamson,* 113 S.Ct. 1710, 1722 (1993). The earlier panels confronting this issue did not have the benefit of *Brecht* or *O'Neil* to guide their analysis. In light of recent Supreme Court rulings it seems appropriate to extend the harmless error analysis to counsel of choice cases.

In the instant case, the federal district court found the state trial court did not comply with the standards established by the First Circuit in *Allen.* This federal district court found 1) Tolliver's motions were timely; 2) the state trial court did not adequately inquire into Tolliver's complaints about his counsel; and 3) the conflict between Tolliver and his counsel was so great he was prevented from receiving an adequate defense. We find,

though there was error on the part of the trial court in failing to conduct an inquiry into Tolliver's reasons for requesting substitute counsel, this error was harmless and the district court should have denied the petition for the writ.

It is true Tolliver was timely in his requests to the trial court for substitute counsel and the trial court provided no more than a cursory investigation into Tolliver's voiced dissatisfaction with his court appointed counsel. It is also clear there was some conflict between Tolliver and his counsel, because Tolliver felt his counsel stated he did not believe in Tolliver's innocence.

**\*\*4** Nevertheless we find Tolliver is not entitled to habeas corpus relief. The statements made by Tolliver's counsel to the trial court were submitted to meet counsel's ethical burden to the court of not initiating perjured testimony, as well as to protect his own interests. There is no indication from the record Tolliver was prejudiced by these statements or harmed by the trial court's failure to make an inquiry into his complaints about his appointed counsel. In addition, the facts of this case indicate overwhelming evidence of guilt. In actuality, the facts clearly indicate Tolliver's counsel was quite effective in his defense. Tolliver was acquitted on one of the two charges in the indictment. Tolliver's counsel was active in his defense by questioning all witnesses and forcing the state to meet its burden of proof on all the charges in the indictment. Tolliver has not shown he was prejudiced by the trial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                    Page 33
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

court's failure to inquire into his reasons for requesting substitute counsel. Thus the trial court's failure to make an inquiry into Tolliver's request for substitute counsel constitutes harmless error.

### III. Conclusion

For the reasons stated above, we REVERSE the district court's granting of Tolliver's petition for a writ of habeas corpus.

MERRITT, Chief Judge, concurring.

I also agree that we should reverse the district court's grant of Mr. Tolliver's petition for writ of habeas corpus. I write separately, however, because, like Judge Wellford, I do not believe that any constitutional error occurred in this case, but, like Judge Keith, I believe that any error was harmless and that a harmless error analysis is appropriate here.

Where a defendant with court-appointed counsel requests substitute counsel, the trial judge has a duty to inquire into the reasons for the request. *United States v. Iles,* 906 F.2d 122, 1130 (6th Cir.1989). The defendant must then demonstrate good cause for the substitution. I agree with Judge Wellford that no constitutional error occurred in this case. Although it is a close question under the facts presented here due to the abbreviated nature of the trial court's inquiry, no constitutional error occurred concerning the inquiry into that request nor did the trial court abuse its discretion in denying Mr. Tolliver's request.

Furthermore, regardless of whether the trial court erred concerning its handling of Mr. Tolliver's request for substitute counsel, I agree with Judge Keith that any error that may have occurred was harmless. Due to the overwhelming and undisputed nature of the evidence presented against Mr. Tolliver, even if the trial judge improperly failed to appoint new counsel or failed adequately to inquire into Mr. Tolliver's request for new counsel, any error was harmless and did not affect the outcome of the trial.

For the reasons stated I agree that we should reverse the granting of the petition for habeas corpus.

WELLFORD, Circuit Judge, concurring:

**\*\*5** I agree that we should reverse the district court's grant of Tolliver's petition for writ of habeas corpus, but I reach this conclusion for reasons that differ from those of my colleagues. Unlike the majority, I do not believe that the trial court erred in denying Tolliver's requests for substitute counsel, and I have serious reservations about the majority's application of a "harmless error" analysis to this case.

"The right to counsel of choice, unlike the right to counsel, ... is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles, 906 F.2d 1122, 1130 (6th Cir.1990)* (citations omitted) (footnote omitted). In determining whether "good cause" exists, the trial court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

must balance the accused's right to select his own counsel against the public interest in prompt and efficient administration of justice. *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985). A motion to substitute counsel is "directed to the sound discretion of the trial judge and will be reversed only for an abuse of discretion." *Id.* at 281 (citations omitted).

There were two episodes which may be deemed to be requests for substitute counsel. The first occurred as the judge prepared to empanel the jury. Tolliver's counsel informed the court that, in light of his client's claim of innocence, he had conducted an extensive investigation of the case. Counsel explained to the court that the investigation convinced him of Tolliver's guilt and that he had "advised [his] client that there was no defense to this case whatsoever." He added that the state was amenable to a plea agreement with respect to one count of aggravated robbery and a resulting sentence of seven to twenty-five years. He advised Tolliver to accept the deal. Counsel said that he wanted it on the record that the decision to proceed to trial was the client's alone. He stated, "the choice to go to trial in this case is his. I will do whatever I can to challenge the testimony of the prosecuting witnesses, but again there is no defense to this case." The court then inquired whether Tolliver wished to proceed with trial. Tolliver responded:

I feel like I am being railroaded and I ask for a line-up. I wanted to take a lie detector test because you see they are lies. He [counsel] don't believe me and you don't have to either, but I know that. And I and

only the Lord knows who's telling the truth in this matter.
You see, *I prefer to have another attorney outside, one that doesn't work for you all.* Because he told me that Dawna Will [eyewitness] refused to speak to his people. And then he tells you that she made a statement.

The court informed defendant that he had no constitutional right to a line up, that a lie-detector test would be inadmissible, and that the case was ready for trial.

Tolliver's second request for substitute counsel came at the close of the state's case-in-chief. Defense counsel moved the court for judgment of acquittal, but the court denied the motion. Out of the presence of the jury, counsel then stated:

**\*\*6** We come down to defendant's case. I would like the record to be very clear that I have advised Mr. Tolliver that he should not testify in this case. I want the record clear that I believe he is going to testify and that his decision to testify is his own. I do not believe anything that Mr. Tolliver will testify to will be the truth. I am ethically required--or prohibited from participating a great deal in his examination because of possibilities of so perjuring himself, which I think may occur if I do participate in this.

In response, Tolliver indicated that he intended to testify; at which point, the following colloquy with the court transpired:

Court: It is certainly your right to testify and--

Defendant: *I wish you would give me an attorney that believes in me.* They never

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

found my fingerprints or nothing on that knife.   It took nine months to get the evidence to [sic] that that they arrested me on.

Court:  I want the record to reflect the fact that he thinks you should not testify.

Defendant:  He also believes in my guilt. Can I put the closing statement in since he won't?

Court:  I'll give that consideration when that point arrives.

Tolliver took the stand and testified on his own behalf, though counsel delivered the closing argument.   The jury found Tolliver guilty of aggravated robbery but acquitted on the charge of felonious assault.   The court sentenced Tolliver to a prison term of eight to twenty-five years.

In reviewing whether a trial court abused its discretion in denying a motion to substitute counsel, we look to the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication, thereby preventing an adequate defense.   *Iles*, 906 F.2d at 1130 n. 8. First of all, neither of Tolliver's requests were timely;  one came at the outset of trial and the second in the middle of trial.   Granting Tolliver's requests, if there actually was a request for another counsel other than the public defender's office, would mandate a last-minute continuance and delay.   The court would have been forced to seek out another attorney to accept an appointment to represent Tolliver, allowing time for substitute counsel

to communicate with his client as well as time to investigate what appeared to be very strong evidence against the defendant.

The fact that the requests were untimely does not, by itself, indicate that there was not "good cause" for substitution.   Calendar control cannot supersede the trial judge's obligation to ensure that the defendant receives an adequate defense.   *Linton v. Perini,* 656 F.2d 207, 209 (6th Cir.1981), *cert. denied,* 454 U.S. 1162 (1982).   But, in this case, the conflict between Tolliver and his lawyer did not result in a lack of communication.   Quite the contrary, it appears that there was significant communication between Tolliver and his lawyer and that defendant simply did not like what his lawyer was telling him.   The fact that counsel did not "believe in" Tolliver's innocence was at the heart of the conflict. While this may have been unsettling to Tolliver, it did not, in my view, constitute "good cause" for substitution.   *Morton v. Foltz,* No. 84-1813, 1985 WL 14072, at *2 (6th Cir. Dec. 11, 1985) (per curiam) (unpublished opinion) (denying habeas relief where defendant sought substitution of counsel because the lawyer did not trust him and noting that "[a] criminal defendant does not have a constitutional right to an attorney with whom he agrees"), *cert. denied,* 479 U.S. 1036 (1987).   The Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel."   *Morris v. Slappy,* 461 U.S. 1, 14 (1983).   That appointed counsel advised Tolliver to accept a plea bargain is certainly not a basis for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                    Page 36
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

substitution. It is the type of legal advice that an attorney should give, after investigation, to a criminal defendant in the exercise of reasonable professional judgment. Moreover, the lawyer's statements to the trial court about the honesty of his client were submitted to meet counsel's ethical burden to the court of not suborning perjured testimony. The court, in response, allowed Tolliver to testify in narrative form. Counsel effectively argued to the jury that Tolliver should not be convicted on the felonious assault charge and, despite very strong evidence to the contrary, the jury acquitted Tolliver of that offense. While there was undeniably a disagreement between Tolliver and his counsel, it did not preclude "an adequate defense," if there was any real defense to the aggravated robbery charge.

 **\*\*7** In my view, there was no "irreconcilable conflict" between Tolliver and his lawyer that prevented Tolliver from receiving an adequate defense. There was, however, a public interest in a prompt trial and the orderly administration of justice. *Wilson,* 761 F.2d at 280. Consequently, I do not believe the trial judge abused his discretion in denying Tolliver's separate requests for new counsel.

 Nonetheless, Tolliver claims that the trial court failed to make sufficient inquiry into his reasons for requesting substitute counsel and failed to determine whether those reasons were legitimate. While I agree that the inquiry conducted by the state judge was less than it should have been, I do not believe that it was so inadequate as to render arbitrary the judge's denial of Tolliver's requests. The

judge heard and considered the reasons for Tolliver's requests. The court noted that neither defendant's desire for a polygraph test nor his request for a line-up were warranted.

 This case is not like *United States v. Jennings,* 945 F.2d 129 (6th Cir.1991), *modified on other grounds,* 966 F.2d 184 (6th Cir.1992), in which defendants argued that the trial court violated their Sixth Amendment rights by denying their request to substitute counsel on the day before trial. There, defendants submitted letters to the judge explaining that they were dissatisfied with their lawyer. *Id.* at 132. The judge inquired as to the underlying reasons for their displeasure, but never ruled definitively on their request. *Id.* In vacating the defendants' convictions and remanding to the district court, we explained that

   [u]nfortunately, the record does not reveal if the district court did, in fact, consider the letters or whether the district court ever formally made a ruling as to each defendant's request for new counsel. We cannot begin to determine whether the defendant's dissatisfaction with their appointed counsel was justified because neither defendant's letter was made part of the record.

   ... Based upon the record before us we are unable to determine whether the district court discharged its responsibility of ascertaining the reasons underlying the defendants' dissatisfaction with counsel.

*Id.* (citation omitted). We remanded in *Jennings* because we had no way of providing meaningful appellate review of the trial judge's denial of the defendants' request for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

new counsel. The letters, which set out the reasons for defendants' dissatisfaction with their lawyer, were not in the record. We could not evaluate whether there was "good cause" for substitution. *Jennings,* then, presented a situation where the reasons for dissatisfaction were unknown. In the instant case, Tolliver indicated his reasons--he wanted a line-up and polygraph test; he wanted someone who "did not work for you all," someone who "believed" in him. In short, he wanted an attorney who did not consider him guilty. As pointed out above, I find none of these reasons, taken separately or in combination, to constitute good cause for substitution of counsel.

 **\*\*8** While the trial judge should have given Tolliver more opportunity to express his displeasure with appointed counsel, and should have provided a fuller rationale for rejecting Tolliver's requests, I find no constitutional error under the circumstances. The majority, on the other hand, holds that the trial judge erred by failing to adequately inquire into the defendant's requests for new counsel. Though finding court error, the majority agrees that we should deny habeas relief. The majority concludes that "harmless error" analysis applies and, therefore, the overwhelming evidence of Tolliver's guilt was sufficient to affirm his conviction. The majority supports its conclusion that harmless error analysis applies by suggesting that Tolliver's claim is based on ineffective assistance of counsel. As an ineffective assistance claim, the prejudice test of *Strickland v. Washington,* 466 U.S. 678

(1984), which is very similar to a harmless error analysis, would control disposition of this case. I believe, however, that Tolliver's claim is based on the Sixth Amendment right to counsel of choice. This distinction is significant, because "harmless error" or prejudice inquiries do not apply to a violation of the right to counsel of choice. *Jones v. Tennessee,* No. 85- 6118, 1986 WL 18132, at *1-2 (6th Cir. Oct. 10, 1986) (per curiam) (unpublished opinion) (applying, in habeas case, *Strickland's* prejudice test to defendant's ineffective assistance claim but not to review of his request for substitute counsel), *cert. denied,* 480 U.S. 948 (1987).

 In *United States v. Iles,* 906 F.2d 1122, 1128 (6th Cir.1990), we explained that claims such as the one brought by Tolliver are not for ineffective assistance but rather the denial of the Sixth Amendment right to counsel of one's choice. *See Wilson,* 761 F.2d at 281 n. 10; *see also Bland v. California, Dep't of Corrections,* 20 F.3d 1469, 1478 (9th Cir.), *cert. denied,* 115 S.Ct. 357 (1994); *but see United States v. Allen,* 789 F.2d 90, 92 n. 4 (1st Cir.), *cert. denied,* 479 U.S. 846 (1986). Indeed, the accused's right to counsel of his choosing is implicated in motions for disqualification, continuances and substitution of new counsel. *Wilson,* 761 F.2d at 281 n. 10.

 Under *Strickland's* test for ineffective assistance, we look to whether there was deficient attorney performance that prejudiced the defense. *Strickland* 466 U.S. at 687. Regardless of the question of prejudice, there

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                      Page 38
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

was more than adequate attorney performance in this case.    Defense counsel fully investigated the crime scene and evidence, as well as his client's protestations of innocence.

Counsel negotiated a favorable plea agreement with the prosecution.    When Tolliver rejected the plea, counsel went before the court and, pursuant to his ethical obligations under the rules of professional conduct, informed the court that he did not believe that there was a genuine defense to the case.    He further informed the court that he would challenge the state's proof to the best of his ability.    When, at the close of the state's case-in-chief, the court denied counsel's motion for a directed verdict, counsel informed the court that Tolliver intended to take the witness stand to testify on his own behalf.    In accord with ethical obligations, counsel told the court that he believed Tolliver would perjure himself and that counsel did not intend to question his client. He persuaded the jury to acquit Tolliver on one count of the indictment despite overwhelming proof of guilt.    Tolliver does not challenge the performance of his lawyer but rather the performance of the trial judge.

**\*\*9** Because Tolliver's Sixth Amendment claim is not based on ineffective assistance of counsel, *Strickland's* prejudice test does not apply.    In *Wilson,* we held that "the *Strickland* test, which governs situations involving the effectiveness of counsel, should not be applied to cases involving the choice of counsel." *Wilson,* 761 F.2d at 283.    "Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice

ordinarily mandates reversal without a showing of prejudice." *Id.* at 281.  *See also Bland,* 20 F.3d at 1478;  *United States v. Collins,* 920 F.2d 619, 625 (10th Cir.1990), *cert. denied,* 500 U.S. 920 (1991);  *United States v. Panzardi Alvarez,* 816 F.2d 813, 818 (1st Cir.1987);  *United States v. Harvey,* 814 F.2d 905, 926 (4th Cir.1987), *reh'g granted in part, sub nom. In re Forfeiture Hearing as to Caplin & Drysdale, Chartered,* 837 F.2d 637 (4th Cir.), *cert. granted,* 488 U.S. 940 (1988), *aff'd,* 491 U.S. 617 (1989).   In *Flanagan v. United States,* 465 U.S. 259 (1984), the Supreme Court also implied, in dicta, that harmless error was inappropriate in right to counsel of choice cases.    Writing for a unanimous Court, Justice O'Connor explained that

the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself.    *Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense,* since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding. Similarly, post-conviction review is concededly effective to the extent that petitioner's asserted right is like the Sixth Amendment rights violated when a trial court ... denies counsel's request to be replaced because of a conflict of interest. *No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed.*

*Id.* at 267-68 (emphasis added) (citations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 F.3d 1070 (Table)                                                  Page 39
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))**

omitted).

In support of a harmless error analysis, the majority relies on *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710 (1993). I do not find *Brecht* particularly helpful in this case. *Brecht* is a habeas case which did not involve, in any way, the right to counsel of choice or even a Sixth Amendment ineffective assistance claim. Rather, *Brecht* involved a defendant's challenge to the trial court's admission of evidence, for impeachment purposes, of defendant's post-*Miranda* silence. *Id.* at 1714-15; *see Bland,* 20 F.3d at 1478 (rejecting the application of *Brecht's* harmless error standard in a counsel of choice case and "holding that Bland need not establish prejudice in order to obtain habeas relief for a violation of his Sixth Amendment right to counsel of his choice"). Thus, *Brecht* offers little guidance in a right to counsel of choice case.

In *Iles,* we held that a defendant's challenge to a trial court's denial of a request for substitute counsel is grounded in the Sixth Amendment right to counsel of choice. *Iles,* 906 F.2d at 1128. In *Wilson,* we held that prejudice or harmless error need not be shown, if and when, a defendant demonstrates the arbitrary or wrongful denial of the right to counsel of choice. *Wilson,* 761 F.2d at 281. In *Flanagan,* the Supreme Court implied that *Wilson* was correct. *See Flanagan,* 465 U.S. at 267-68. Applying *Iles* and *Wilson,* I believe Tolliver's claim must be characterized as the denial of his right to counsel of choice, not ineffective assistance of counsel. I would not

apply a harmless error analysis in this case. I am not persuaded that recent Supreme Court authority, such as *Brecht,* supplants *Iles, Wilson,* and other appellate authority supporting this circuit's rationale in Sixth Amendment situations.

**\*\*10** I concur in reversing the district court's grant of defendant's petition for habeas corpus for the reasons stated.

> FN1. The facts at trial, as recited in the opinion of the Ohio Court of Appeals in this case are not disputed and must be accepted. The relevant facts taken from the Ohio Court of Appeals opinion are:
> The case proceeded to trial. Dawna Will and Roy King testified concerning what happened in the 7-Eleven store on East Main Street, Whitehall, Ohio, involving the offenses. They stated that the appellant entered the store purchased a soft drink, then he pulled a knife on Will and told her to give him the money in the cash register. [Will] said he dragged her over to cash register and it locked. Apparently, appellant released [Will] so she could unlock the register. Thereafter, she gave him a stack of dollar bills and some food stamps. Will and King testified that appellant fled from the scene. King pursued him. James Johannes, however, a neighbor, caught appellant and held him until the Whitehall police arrived. The police recovered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
57 F.3d 1070 (Table)                                        Page 40
57 F.3d 1070 (Table), 1995 WL 364176 (6th Cir.(Ohio))
Unpublished Disposition
(Cite as: 57 F.3d 1070,  1995 WL 364176 (6th Cir.(Ohio)))
```

money, food stamps and a knife at the
scene.
(J.A. at 319).

57 F.3d 1070 (Table), 1995 WL 364176 (6th
Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.